## Case No. 7,982.

### The LADY FRANKLIN.

[1 Biss. 557; [1] 16 Pittsb. Leg. J. 30; 1 Chi. Leg. News, 273.]

Circuit Court. N. D. Illinois. Jan. Term, 1867.

#### LIEN ON DOMESTIC VESSEL.

1. Where ordinary supplies are furnished to a vessel running upon the lakes, upon application of the master, no inquiry being made as to the credit of the master or owner, no maritime lien is created, even though they were charged directly to the vessel, and it was taken for granted that they constituted such a lien.

2. To sustain such a lien, a case of maritime necessity for a credit upon the vessel must be established.

[Questioned in The St. Joseph, Case No. 12,-229. Cited in The Templar, 59 Fed. 206.]

3. Maritime liens are not allowed to those furnishing a vessel with her usual supplies on her regular trips, and at her usual ports of entry and discharge.

[Appeal from the district court of the United States for the Northern district of Illinois.]

This was a libel filed by Lyons and Finney for supplies, materials and repairs furnished to the propeller Lady Franklin in the summer of 1864, at Oswego, New York. The propeller was being run by one Kirkland, who held the same under an agreement of purchase with A. E. Goodrich, which had been only in part fulfilled, and in the following year she reverted to Goodrich, the claimant in these proceedings. Kirkland resided in Sheboygan, Wisconsin, and Goodrich in Chicago. The vessel was registered in Chicago. Kirkland was running the propeller under a charter party with the Grand Trunk Railway Company of Canada, from the port of Toronto, in Canada, to the port of Oswego, New York, making two or three regular trips each week, and carrying freight and passengers. The charter-party was for a specified sum each trip, the vessel to pay her own expenses. A part of the charter money was received by the captain, but the greater part was collected by Kirkland. The libellants knew that Kirkland was running the vessel, but it does not appear that they knew the terms of his charter-party. The supplies and repairs in question were charged directly to the vessel, it seeming to have been

taken for granted that they constituted a lien upon the vessel, but no express agreement to hypothecate the vessel for their payment was made. The original understanding upon which the supplies were furnished, and about which there is no dispute, was thus stated in the evidence of the master: that on or about the 9th of July, he applied to Lyons & Finney for credit, saying to them that he had got things for the boat, for which the boat owed them, and he would pay as soon as the boat earned the money. Lyons said he would wait till the boat came back, until she had made a trip. He did not apply to them for credit upon the personal responsibility of the owner or himself, and the bills were for ordinary supplies furnished while the propeller was making her regular trips. It was admitted that the supplies furnished were such as were proper, usual and necessary for such a vessel in the business in which she was then engaged, and included various needful repairs made to her, both in dry dock and otherwise during the season. It was claimed by the libellants that neither the said Kirkland, nor the master of the vessel had any personal credit at Oswego, and that the materials and repairs furnished could not have been obtained upon the personal credit of either at that place. There was no evidence as to the personal responsibility of Kirkland. All that appeared in evidence upon this point was that Lyons & Finney had no knowledge of his having any credit in Oswego or elsewhere, but it did not appear that any inquiry was made as to his responsibility, or any attempt made to procure the supplies or repairs upon the credit of Kirkland. Nor did it appear that Kirkland was notified that these parties were furnishing supplies on an express or implied hypothecation of the vessel as their security, or that any attempt was made to communicate with him upon the subject. He was in Oswego several times during the summer.

The claimant, Goodrich, objected that upon the above state of facts no maritime lien was created which could be enforced against the propeller in his hands.

H. F. Waite and Robert Rae, for libellants.
Goodwin & Larned, for respondents.

DAVIS, Circuit Justice. This case is within the principle of the decision of Pratt v. Reed, 19 How. [60 U. S.] 359. I understand that case to decide that in order to a valid maritime lien upon a vessel for supplies and repairs, it must appear not only that such repairs and supplies were needful to the vessel when furnished, but that the existence of some unforeseen and unexpected emergency, making it necessary to procure such supplies and repairs at such time upon the credit of the vessel, must also be shown; and that the circumstances under which such supplies and repairs are furnished, must be

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

such as would, under the maritime law, have justified and sustained the giving at such time a bottomry bond, for the same repairs and supplies; the only difference being that, in the case of the giving a bottomry bond, it must further appear that there was a necessity for paying the extraordinary interest incident to that security. It was further ruled in that case, "that the supplies having been furnished at a fixed place according to the account current, and apparently under some general understanding and arrangement, the presumption is that there could be no necessity for the implied hypothecation of the vessel,—there could be no unexpected or unforeseen exigency to require it; and that for aught that appeared, the supplies could have been procured on the personal credit of the owner."

Applying to this case the principles of the above decision, in which I entirely concur, the claim of the libellants cannot be sustained. There is nothing in the case which establishes such a case of maritime necessity for a credit upon the vessel as would alone sustain the lien which the libel seeks to maintain. There was no unexpected or unforeseen emergency. The vessel was in her regular course of business, at one of her established ports of arrival and departure. She was running between Toronto and Oswego, upon a charter-party with the Grand Trunk Railway, and Oswego was one of her regular ports for procuring the usual and needful repairs and supplies which were required by her from time to time upon the successive trips performed by her. It is obvious that proper provision should be made by those who were running her to meet such running expenses. The freight money earned upon the charter should have supplied her with sufficient funds for that purpose.

To allow vessels to be subject to secret maritime liens to those furnishing her with her usual supplies on her regular trips, and at her usual ports of entry and discharge upon such trips, would be injurious to the best interests of commerce. If this were to be permitted, the interests of the parties having mortgages upon vessels, and of owners letting vessels upon charters, would be greatly jeopardized, and the vessel practically could be run at their cost.

In addition to the absence in this case of any evidence of any such unforeseen and unexpected emergency as would justify a maritime lien upon the vessels for the repairs and supplies furnished, even in a case where it satisfactorily appeared that the owner of the vessel had no personal credit in the port of supply, the proof in this case fails to furnish sufficient evidence of the inability to procure such supplies and repairs upon the credit of the owner. It is not sufficient to show that the parties furnishing such supplies did not know that the owner had a credit. They are bound to proper and reasonable diligence in making inquiries as to such credit, and the inability to obtain such supplies, upon such credit, ought to appear by showing proper efforts so to obtain them.

In this case, the supplies and repairs were charged at once to the vessel. No inquiries were made as to the owner's responsibility, nor does it appear that the owner was without credit at the port of supply. It appears that the vessel was run upon a charter, and was to receive so much for each trip, and that these earnings were received by the master and owner, and these facts would rather furnish ground for the presumption that they had the means either to pay for the needed supplies, or to obtain a personal credit for the amount of them; and as no attempt was made by communicating with the owner, or otherwise, to raise the needed amount in this way, the language of the supreme court in Pratt v. Reed [supra] may be appropriately applied to this case; that, "for aught that appears, the supplies could have been procured on the personal credit of the owner."

Libel dismissed.

NOTE. This claim was one of a number filed at the same time and submitted to Judge Drummond, who ruled that, in his opinion, they constituted, under the general maritime law, valid liens upon the vessel, but doubted whether, under the rulings of the supreme court in Pratt v. Reed, they could be sustained, and suggested that the case be heard before Justice Davis, and his judgment be entered in each case as the judgment of the district court, which was done, and the above opinion rendered.

In the case of The Grapeshot, 9 Wall. [76 U. S.] 129, the supreme court go into an extended discussion of the doctrine of maritime liens for repairs and supplies, and sum up the doctrine of maritime hypothecation in the following propositions:

1st. Liens for repairs and supplies, whether implied or express, can be enforced in admiralty only upon proof made by the creditor that the repairs or supplies were necessary, or eblieved upon due inquiry and credible representation, to be necessary.

2nd. Where proof is made of necessity for the repairs or supplies, or for funds raised to pay for them by the master, and of credit given to the ship, a presumption will arise, conclusive, in the absence of evidence to the contrary, of necessity for credit.

3d. Necessity for repairs and supplies is proved where such circumstances of exigency are shown as would induce a prudent owner, if present, to order them or to provide funds for the cost of them on the security of the ship.

4th. The ordering by the master of supplies or repairs upon the credit of the ship, is sufficient proof of such necessity to support an implied hypothecation in favor of the material-man, or of the ordinary lender of money, to meet the wants of the ship, who acts in good faith.

5th. To support hypothecation by bottomry, evidence of actual necessity for repairs and supplies is required, and, if the fact of necessity be left unproved, evidence is also required of due inquiry and of reasonable grounds of belief that the necessity was real and exigent.

See, also, Thomas v. Osborn, 19 How. [60 U. S.] 22; The James Guy [Case No. 7,196]; The Sea Lark [Id. 12,579]; The Sarah Starr [Id. 12,-354]; The Eledona [Id. 4,340]; The Washington Irving [Id. 17,244]; The John Lowe [Id. 7,-356].

For cases on hypothecation, see Skrine v. The Hope [Id. 12,927]; O'Hara v. The Mary [Id. 10,467]; Boreal v. The Golden Rose [Id. 1,658]; Sloan v. The A. E. I. [Id. 12,946]; Liebart v. The Emperor [Id. 8,340]; Turnbull v. The Enterprise [Id. 14,242]; Forbes v. The Hannah [Id. 4,925]; Cainzares v. The Trinidad [Id. 2,-383].

In a case lately decided in the district of Oregon, The Augusta [Id. 647], November, 1872, Deady, J., holds that under rule 12, in admiralty, as amended, May 6, 1872, a material-man has, by the general maritime law, a lien upon the ship which may be enforced in admiralty, whether the ship be domestic or foreign, or whether in a home or foreign port. In The Circassian [Id. 2,720a], November, 1872, Blatchford, J., ruled that this amendment to the rule did not apply to supplies furnished previous to May 6th, before which time necessaries furnished to a vessel in her home port did not constitute a lien under the maritime law.

Consult, also, The Celestine [Id. 2,541]; The Selt [Id. 12,649], October term, 1872.